FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2010 NOV 30 P 4: 04

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

MARKEL ASPEN, INC.
d/b/a FIRSTCOMP INSURANCE
Central Park Plaza South
222 South 15th Street, Suite 1200
Omaha, Nebraska 68102-1680,

Plaintiff,

v.

<FIRSTQUOTE.COM>,

Defendant.

Civil Action No. 1:10cv 1349 GBL/TCB

**COMPLAINT**

Markel Aspen, Inc. d/b/a FirstComp Insurance ("FirstComp" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint for *in rem* transfer or cancellation of the domain name <firstquote.com> (the "Infringing Domain Name") pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2) (the "ACPA") and, in support thereof, alleges the following:

**NATURE OF ACTION**

1. This is an action brought pursuant to the *in rem* provisions of the ACPA. Plaintiff is a leading provider of worker's compensation insurance services throughout the United States. Plaintiff is the owner of the registered United States trademarks for 1STQUOTE, Reg. Nos. 3,302,240 issued October 2, 2007 and 3,739,776 issued January 10, 2010, relating to the underwriting and administration of worker's compensation insurance and online insurance

writing and administration software in the field of worker's compensation insurance (the "1STQUOTE Mark"). Plaintiff has made extensive use of its 1STQUOTE Mark since at least as early as January 2003. Plaintiff's 1STQUOTE branded software is available on-line through its website, where it is prominently featured on each page and allows plaintiff's independent insurance agents to gather insurance rate quotes, sign up new accounts or undertake actions relating to insurance claims, coverage or questions. Plaintiff has spent substantial sums advertising the 1STQUOTE Mark and otherwise promoting its products and brand.

2.      Notwithstanding Plaintiff's prior rights to the 1STQUOTE Mark, on information and belief, the Infringing Domain Name was purchased through an auction process and registered on February 25, 2010 and is currently being used for a pay-per-click website that features links to Plaintiff's workers' compensation insurance competitors. A true and correct copy of the WHOIS record for the Infringing Domain Name is attached hereto as **Exhibit 1**. The registrant is identified on the WHOIS record as: "FIRSTQUOTE.COM Privacy--Protect.org" (the "Accused Registrant"). (*See* **Exhibit 1**.) Because Plaintiff is not aware of any basis for asserting personal jurisdiction over the Accused Registrant in the United States, Plaintiff brings this as an *in rem* action under the ACPA for injunctive and other relief relating to the bad-faith registration of the Infringing Domain Name.

## THE PARTIES

3.      Plaintiff Markel Aspen, Inc. d/b/a FirstComp Insurance is a Delaware corporation with a place of business at Central Park Plaza South, 222 South 15th Street, Suite 1200, Omaha, Nebraska 68102-1680, USA.

4.      Defendant <FIRSTQUOTE.com> is an Internet domain name registered through Hebei Guoji Maoyi (Shanghai) Ltd d/b/a hebeidomains.com, which is located in China. A true

and correct copy of Hebei Guoji Maoyi (Shanghai) Ltd dba hebeidomains.com's contact information, as currently published online, is attached as **Exhibit 2**.

5. By virtue of its <.com> top level domain extension, Defendant <FIRSTQUOTE.com> resides with the <.com> registry maintained by VeriSign, Inc., who maintains an office at 21355 Ridgetop Circle – Lakeside III, Dulles, Virginia 20166. A true and correct copy of VeriSign, Inc.'s office list currently published online is attached as **Exhibit 3**.

## JURISDICTION AND VENUE

6. This Court has *in rem* jurisdiction over the Infringing Domain Name under 15 U.S.C. § 1125(d)(2)(C) because VeriSign, Inc., which maintains the <.com> registry within which the Infringing Domain resides, has an office located in this judicial district and conducts business in this judicial district.

7. This Court has subject matter jurisdiction under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1381(a) and 15 U.S.C. § 1125(d)(2)(C) because the *res, i.e.*, the Infringing Domain Name, is located within this judicial district.

## FACTUAL BACKGROUND

### Plaintiff's Rights in its 1STQUOTE Mark

9. Plaintiff provides products and services in the field of workers' compensation insurance including, claims processing services and on-line insurance application and claims processing services.

10. Headquartered in Omaha, Nebraska, FirstComp maintains regional offices in Omaha, Nebraska; Warwick, Rhode Island; Henderson, Nevada; and Tampa, Florida.

11. FirstComp sells its workers' compensation insurance products and services through a group of more than **7,500** independent insurance agencies located in 31 states.

12. Starting with a mere three (3) employees in 1997, FirstComp has grown to more than 575 employees in four regional offices serving nearly 100,000 business customers around the U.S.

13. Today, one out of every 450 workers in the United States is insured by FirstComp.

14. Plaintiff has won several awards of excellence: (1) it was named the most profitable commercial lines insurer by *National Underwriter* magazine, (2) it was listed in *Inc. Magazine* as one of the Top 500 Fastest Growing Companies for four consecutive years, (3) it was listed as one of the top 5 Best Places to Work in Omaha, Nebraska two years in a row, and (4) it received the Omaha Excellence in Business Award for 2005 and 2006 by the Greater Omaha Chamber of Commerce. In addition, in 2002, Plaintiff won the prestigious Ernst & Young Entrepreneur of the Year award. This award honors entrepreneurs whose ingenuity, hard work, and perseverance have created and sustained successful, growing business ventures. Award winners are judged on financials, innovation, vision, people "first" philosophy and commitment to their business and community.

15. Plaintiff owns United States trademark Reg. No. 3,302,240 for the mark 1STQUOTE for "Providing on-line non-downloadable work flow computer software for use in database management and administration in the field of insurance information". This registration issued on October 2, 2007 and is based on a first use date of January 1, 2003. Copies of the U.S. Registration Certificate and USPTO on-line database records for this registration are attached hereto as **Exhibit 4**.

16. Plaintiff owns United States trademark Reg. No. 3,739,776 for the mark 1STQUOTE for "insurance underwriting in the field of worker's compensation insurance; insurance premium rate computing; providing information regarding workers' compensation insurance policy rates" and "application service provider (ASP) featuring software for use via the internet in supporting insurance policy sales, insurance underwriting, insurance policy issuance, insurance premium rate computing, insurance policy administration, namely, providing loss runs and accessing insurance policy numbers for issued accounts." This registration issued on January 10, 2010 and is based on a first use date of January 1, 2005. Copies of the U.S. Registration Certificate and USPTO on-line database records for this registration are attached hereto as **Exhibit 5**.

17. In accordance with Sections 7(b), 22 and 33(a) of the Lanham Act, Plaintiff's above-cited registrations constitute prima facie evidence of the validity of the registered marks and of the registrations thereof, Plaintiff's ownership of the marks shown in said registrations, and Plaintiff's exclusive right to use the marks in commerce in connection with services named therein, without condition or limitation.

18. The registrations of Plaintiff's 1STQUOTE mark in the United States on the Principal Register creates a presumption that the mark is inherently distinctive pursuant to 15 USC § 1057. Accordingly, the Plaintiff's 1STQUOTE mark is entitled to a wide scope of trademark protection.

19. Plaintiff's registrations for its 1STQUOTE mark constitute notice to Defendant of Plaintiff's claim of ownership of the mark referenced by such registrations.

20. Since January 2003, FirstComp has widely used the 1STQUOTE mark to promote its workers' compensation insurance products including, its on-line application processing software.

21. The 1STQUOTE mark is prominently featured on Plaintiff's website and marketing materials. Examples of Plaintiff's website and marketing materials featuring the 1STQUOTE mark are attached as **Exhibit 6**.

22. The 1STQUOTE branded software allows Plaintiff's 7,500 independent insurance agencies to (1) request to bind business and receive immediate binder coverage, (2) communicate with FirstComp underwriters via instant, online messaging, (3) check on the status of workers' compensation insurance submissions, (4) look up class code descriptions and quoting eligibility, (5) access policy numbers for issued accounts, (6) retrieve loss runs and claim details for specific insureds, and (7) print state specific forms.

23. Through its efforts over the past six (6) years, FirstComp has established a strong customer base and is well-known throughout its trading area as a provider of quality workers' compensation insurance products and services in connection with the 1STQUOTE mark.

24. By virtue of the quality of its products and services, and as a result of its expenditure of considerable sums of money on advertising and promotional activity, FirstComp has built up valuable goodwill in its 1STQUOTE mark. Such mark is of immeasurable value to FirstComp.

**Plaintiff's Use of the Internet**

25. FirstComp has an active presence on the Internet. Plaintiff registered its <firstcomp.com> domain name on or about May 27, 1999 and has operated a website at this Internet address since at least as early as March 2001. The mark 1STQUOTE is prominently

featured on the home page and interior pages of Plaintiff's website located at the Internet address <firstcomp.com>.

26. Plaintiff uses its <firstcomp.com> website to advertise, promote and sell its workers' compensation insurance products and services including, its 1STQUOTE branded services. The Plaintiff's website operates 24 hours a day and permits insurance agents to access the 1STQUOTE online application software at any time. Printouts from Plaintiff's website are provided as **Exhibit 7** to this Complaint.

27. The Internet has become an extremely important communication and marketing tool for Plaintiff's 1STQUOTE branded service.

28. The 1STQUOTE mark represents to the worldwide consuming public the services offered by Plaintiff, its affiliates and/or licensees.

29. Plaintiff has made extensive use of the 1STQUOTE mark by providing its services throughout the United States and, due to Plaintiff's extensive use and registration of the 1STQUOTE mark, it has become very well known as a distinctive indicator of Plaintiff's services.

**Registration of the Infringing Domain Name**

30. Subsequent to Plaintiff's use and registration of the 1STQUOTE mark in the United States, and without Plaintiff's consent, the Infringing Domain Name was registered with Hebei Guoji Maoyi (Shanghai) Ltd d/b/a hebeidomains.Com.

31. The Infringing Domain Name is a top level domain name ending in <.com>, and as such, it is located within the <.com> registry for when the registration is VeriSign, Inc.

32. The Infringing Domain Name wholly includes Plaintiff's protectable 1STQUOTE mark. Thus, the Infringing Domain Name is confusingly similar to, and dilutive of, the famous

1STQUOTE mark and violates Plaintiffs' exclusive trademark and service mark rights in the 1STQUOTE mark in the United States.

33. The only difference between Complainant's registered mark 1STQUOTE and Infringing Domain Name <firstquote.com> is that "1ST" in Complainant's 1STQUOTE registered mark is spelled out as the phonetic equivalent "first" in the subject domain name and the addition of the gTLD designation ".com."

34. The Infringing Domain Name is confusingly similar to Plaintiff's protected mark and creates the same commercial impression.

35. The Infringing Domain Name is currently associated with a pay-per-click, "link farm" website that features links to Plaintiff's competitors and/or several third party websites that advertise and sell **competing** insurance and workers compensation related products and services in the United States. Print outs from Defendant's website are attached hereto as **Exhibit 8**.

36. For example, these competing websites include, <statefarm.com.com>, a website that offers worker's compensation insurance, < b-h-a.com>, a website that offers worker's compensation insurance, <netquote.com>, a website that offers competing workers' compensation insurance and other business insurance products and services, <insurance edeals4u.com>, a website that offers competing workers' compensation insurance and other business insurance products and services, and <haydenwood.com>, a website that offers worker's compensation insurance. Excerpts from these competing third party websites are provided as **Exhibit 9**.

37. The Infringing Domain Name is using the <firstquote.com> domain to attract United States consumers who are looking for Plaintiff and its 1STQUOTE branded web-based

application processing system to its website, which provides hyperlinks to several competing websites of United States-based competitors.

38. Presumably the owner of the Infringing Domain Name receives a pay-per-click fee or commission every time it re-directs a consumer searching for Plaintiff to one of these third party competing websites.

39. The actions described herein resulting from use of the Infringing Domain Name continue to cause Plaintiff irreparable harm for which is has no adequate remedy at law.

## COUNT I

### *In Rem* Action Under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(2))

40. Plaintiff re-alleges and incorporates by reference paragraphs 1-39 as if fully set forth herein.

41. As set forth above, and under Section 1125(d)(2)(A)(i), the Infringing Domain Name violates Plaintiff's rights in connection with the 1STQUOTE Mark because the Infringing Domain Name is confusingly similar to the 1STQUOTE Mark and is dilutive of the 1STQUOTE Mark.

42. On information and belief, the Infringing Domain Name is not associated with any trademark rights in, and no trademark registrations for, the 1STQUOTE Mark or its phonetic and virtually identical FIRSTQUOTE equivalent in the United States.

43. The continued registration and/or use of the Infringing Domain Name constitutes a violation of 15 U.S.C. § 1125(d)(2), which protects the owner of U.S. trademarks and prohibits the registration of Internet domain names that are confusingly similar to any trademark, or dilutive of any famous trademark.

44. Plaintiff has suffered, and continues to suffer, irreparable harm to its reputation and goodwill as a result of the registration of the Infringing Domain Name.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Markel Aspen, Inc. respectfully requests that this Court enter an order for Plaintiff which requires the transfer of the Infringing Domain name to Plaintiff as follows:

i. VeriSign, Inc. shall change the <firstquote.com> domain name from its current registrar to Network Solutions, Inc. ("Plaintiff's Registrar");

ii. Plaintiff's Registrar shall register the < firstquote.com> domain name in the name of Markel Aspen, Inc.; and

iii. Plaintiff shall be awarded such other and further relief as this court may deem just.

Date: November 30, 2010

Respectfully submitted,
MARKEL ASPEN, INC.

By its attorneys,

Jonathan D. Frieden, Esquire (VSB No. 41452)
Stephen A. Cobb, Esquire (VSB No. 75876)
ODIN, FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22031
Tel: (703) 218-2125
Fax: (703) 218-2160
E-mail: jonathan.frieden@ofplaw.com
E-mail: stephen.cobb@ofplaw.com